UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  Case No. 16-CR-92

SUSAN MOYER,

        Defendant.

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Matthew L. Jacobs and Laura S. Kwaterski, Assistant United States Attorneys for said district, and the defendant, Susan Moyer, individually and by attorney Daniel Stiller, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in eleven counts of a twenty-four count indictment, which alleges violations of Title 21, United States Code, Sections 841(a)(1), b)(1)(C) and 846.

3.    The defendant has read and fully understands the charges contained in the indictment. She fully understands the nature and elements of the crimes with which she has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4.    The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT TWENTY-TWO

**THE GRAND JURY FURTHER CHARGES:**

On or about February 21, 2014, in the State and Eastern District of Wisconsin,

**SUSAN MOYER**

knowingly and intentionally distributed a mixture and substance containing Oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

5. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following term of imprisonment and fine: twenty years and $1 million. This count also carries a mandatory special assessment of $100, at least 3 years of supervised release, and a maximum of lifetime of supervised release.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## DISMISSAL OF COUNTS

8. The government agrees to move to dismiss counts Twenty-Three and Twenty-Four of the indictment at the time of sentencing.

9.      This agreement does not affect the disposition of Counts One, Three, Four, Seventeen, Eighteen, Nineteen and Twenty (the "pill mill" counts). Moyer is scheduled to proceed to trial on the "pill mill" counts on July 23, 2018 and at trial, the government agrees it will not introduce the defendant's guilty plea to Count Twenty-Two or any of the facts underlying Counts Twenty-Two through Twenty-Four, (the "street sale" counts).

**ELEMENTS**

10.     The parties understand and agree that in order to sustain the charge of distributing of Oxycodone, a Schedule II controlled substance, as set forth in count Twenty-Two, the government must prove each of the following propositions beyond a reasonable doubt:

<u>First</u>, the defendant knowingly distributed Oxycodone; and

<u>Second</u>, the defendant knew the substance was some kind of a controlled substance.

**SENTENCING PROVISIONS**

11.     The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12.     The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13.     The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions, which they believe to be applicable to the offense, set forth in paragraph 4. The defendant acknowledges and agrees that her attorney in turn has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

3

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

15. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count Twenty-Two is 16 under Sentencing Guidelines Manual § 2D1.1.

## Acceptance of Responsibility

4

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information, which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense, as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the length of supervised release and the terms and conditions of the release; and any other matters not specifically addressed by this agreement.

21. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States

5

Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

### Fine

25. The parties agree to recommend that no fine be imposed.

### Special Assessment

26. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

27. In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn, the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e. At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

28. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant

8

Case 2:16-cr-00092-LA   Filed 04/13/18   Page 8 of 13   Document 52

under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

29. The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

30. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

31. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

32. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

33. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

34. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

### **EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT**

35. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

### **VOLUNTARINESS OF DEFENDANT'S PLEA**

36. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 4/13/2018

SUSAN MOYER
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 4/13/2018

DANIEL STILLER
Attorney for Defendant

For the United States of America:

Date: 4/13/18

MATTHEW D. KRUEGER
United States Attorney

Date: 4/13/18

MATTHEW L. JACOBS
LAURA S. KWATERSKI
Assistant United States Attorneys

11

## ATTACHMENT A

On February 21, 2014, a confidential source (CS) purchased 67 Oxycodone 15 mg pills from Susan Moyer. Prior to the controlled buy, Moyer and the CS exchanged text messages to arrange for the purchase of the Oxycodone 15 mg pills. On February 21, 2014, the CS and Moyer met at Moyer's residence and then traveled to 36XX N. 76th Street, Milwaukee, WI to obtain the Oxycodone 15 mg pills. The CS paid Moyer $760 for the Oxycodone 15 mg pills. The controlled buy was audio recorded. During the controlled buy, Moyer is recorded discussing that she would obtain 15 mg pills at a decent price, dump them, referring to selling them, and then pick up 30 mg pills. Moyer states that it was good to have mix (of Oxycodone 15 mg and 30 mg) because sometimes you don't need a whole 30, referring to Oxycodone 30 mg pill. Moyer tells the CS that she bought pills last night and mentions that $18 for 30 mg pills is a good price. During the deal, Moyer is recorded counting the pills and states there were 78 pills. The CS stated that the deal was to purchase 84 pills. After the deal, the CS determined that Moyer only sold her 67 Oxycodone 15 mg pills. The CS placed a recorded call to Moyer to discuss the shortage. During the recorded call, the CS tells Moyer that s/he was short and that there was supposed to be 84 and that instead there were 67 Oxycodone 15 mg pills. Moyer tells the CS that she counted 78 pills.

On March 5, 2014, the CS attempted to purchase Oxycodone pills from Moyer at her residence, 23XX Goldcrest Avenue, Milwaukee, WI. Prior to the attempted controlled buy, Moyer told the CS that an individual would be bringing the Oxycodone pills to Moyer's residence for the CS's purchase. On March 5, 2014, the CS went to Moyer's residence, however, the individual providing the Oxycodone pills did not show up. The attempted controlled buy was audio recorded and Moyer is recorded stating that if Moyer gets the Oxycodone pills from the female she will hold onto them and give them to the CS the next day. During the attempted controlled buy, Moyer is recorded stating that she doesn't mind paying $20 (per Oxycodone 30 mg pill) if the individual is coming all the way from Oconomowoc. Moyer is recorded stating that she would go through withdrawals before paying $25 a pill and some people keep paying that much and those who are selling pills will keep raising the price. Moyer states that, if the price of pills increases, no one will buy them and people will end up dead from heroin. Moyer also tells the CS that she was going to pick up 50 pills for the CS.

On April 10, 2014, the CS purchased 46 Oxycodone 30 mg pills from Moyer. Prior to the controlled buy, the CS and Moyer exchanged text messages and a recorded call to set up the deal, which was supposed to be for 100 Oxycodone 30 mg pills. During the recorded call on April 10, 2014, Moyer spoke to the CS about meeting Justin Hoffmann, her son, and Moyer also stated she would be able to get them (Oxycodone 30 mg pills) later for $19-$20 per pill. The CS exchanged text messages with Justin Hoffmann and agreed to meet to conduct the deal at a CVS pharmacy located in West Allis, WI. The CS and an undercover agent traveled to the CVS Pharmacy parking lot and met with Justin Hoffman to purchase 100 Oxycodone 30 mg pills. During the deal, Moyer's son, Justin Hoffmann, stated that he only had 51 Oxycodone 30 mg pills as opposed to the 100 Oxycodone 30 mg pills that the CS had wanted. The CS handed Moyer's son, Justin Hoffman, $1020 for the 51 pills ($20 for each Oxycodone 30 mg pill). As Hoffmann was leaving, he signaled to the CS to open the CS's window, which the CS did. Hoffmann then handed the CS $100 through the window of the CS's vehicle and explained to the CS that there were only 46 pills, not 51 pills.

12

On April 23, 2014, an undercover agent (UC) purchased 50 Oxycodone 30 mg pills from Moyer for $1,000. This controlled buy was audio recorded. On April 23, 2014, the UC and Moyer agreed to meet at a McDonald's restaurant in Milwaukee, WI and then traveled together to an O'Reilly Auto Parts parking lot to obtain the Oxycodone 30 mg pills. The UC provided Moyer with $1,000 and Moyer met with an individual, who Moyer referred to as "Will," in the O'Reilly Auto Parts parking lot and returned to the undercover vehicle and provided the UC with Oxycodone 30 mg pills. The UC counted 40 Oxycodone 30 mg pills and told Moyer that it was short. Moyer then called "Will" and told him to return because the UC was 10 pills short. "Will" then returned to the parking lot and Moyer obtained 10 additional Oxycodone 30 mg pills from "Will," and provided them to the UC. During the recorded controlled buy, "Will" was recorded telling Moyer to call him tonight and that he would give her the 80s, referring to Oxycodone 80 mg pills.